UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

PORTLAND DIVISION

| | |
|---|---|
| SEAN PATRICK R.[1]<br><br>  Plaintiff,<br><br>v.<br><br>ANDREW SAUL,<br>Commissioner of Social Security,<br><br>  Defendant. | Case No. 3:18-CV-00460-AC<br><br>FINDINGS AND<br>RECOMMENDATION |

ACOSTA, Magistrate Judge:

*Introduction*

Plaintiff Sean Patrick Reilly ("Plaintiff") brings this action under the Social Security Act ("SSA"), 42 U.S.C. § 405(g), for judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his claim for Social Security Disability Insurance

---

[1] In the interest of privacy, this Findings and Recommendation uses only the first name and the initial of the last name of the non-governmental party in this case.

benefits ("SSDI"). (Tr. of Social Security Administrative R., ECF No. 13 ("Admin. R."), at 22.)[2] The Commissioner concedes reversible error and moves the court to remand for additional administrative proceedings. (Def. Br. and Mot. for Remand, ECF No. 16 ("Def. Br."), at 2.) Plaintiff opposes additional proceedings and urges the court to remand for a finding of disability and immediate award of benefits. (Pl. Reply Br., ECF No. 17 ("Pl. Reply"), at 2.)

For the reasons set forth below, Plaintiff's request for remand for finding of disability and award of benefits should be granted. This case should be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for immediate award of benefits.

*Procedural Background*

Plaintiff initially filed his claim for SSDI on November 15, 2013, which was denied, initially on April 9, 2014, and upon reconsideration on November 24, 2014. (Admin. R. at 22.) Following a written request filed on December 10, 2014, Plaintiff testified before Administrative Law Judge John Michaelsen ("ALJ") at a hearing held on August 18, 2016. (*Id.*) The ALJ issued an unfavorable decision on October 11, 2014. (*Id.*) Plaintiff then appealed the decision to the Appeals Council, but the it denied Plaintiff's request for review on January 17, 2018, making the ALJ's determination the final decision of the Commissioner. (*Id.* at 1.)

*Factual Background*

Plaintiff was born in 1978, and though Plaintiff dropped out of high school in his junior year, he received his GED prior to joining the Army and completed approximately two years of college following his honorable discharge. (*Id.* at 58, 451.) Prior to Plaintiff's alleged date of disability, January 11, 2011, Plaintiff worked as a window delivery helper from September of

---

[2] For clarification, the cites to the administrative record correspond to the page number of the prepared transcript and not to the page number of the individual document.

2003 to December of 2004, as an order puller in a warehouse from February of 2004 to October of 2005, and as an enlisted member of the U.S. Army from January of 2006 through January of 2011. (*Id.* at 160.) During his deployments to Baghdad and Mosul, Plaintiff experienced three separate improvised explosive device ("IED") attacks as a result of which he incurred physical and psychological impairments. (*Id.* at 450-51.) Plaintiff suffered additional physical impairments related to his service in the Army. (*Id.* at 252-53.)

In December of 2015, Jonathan Harrison, M.D., ("Dr. Harrison"), examined Plaintiff and diagnosed him with ulnar neuropathy status post transposition surgery, lumbar arthropathy, and left hip arthropathy. (*Id.* at 256.) In October of 2013, Camden Schobert, Staff Psychologist at Portland Veteran's Affairs Medical Center, ("Schobert"), diagnosed Plaintiff with post-traumatic stress disorder ("PTSD") and depression. (*Id.* at 28, 263, 305.) Though Plaintiff testified his PTSD symptoms were present during and after his deployment, beginning as early as 2007, Plaintiff's earliest diagnosis of PTSD was in March of 2011. (*Id.* at 45, 260.) Plaintiff received treatment for his mental health through the Department of Veterans Affairs ("VA"). (*Id.* at 258-448, 450, 464-513.) Though Plaintiff's treating psychiatrist, Clifford Lynam, M.D., ("Dr. Lynam"), opined that Plaintiff would miss two or more workdays from a simple, routine job due to his impairments, the ALJ disregarded only this part of Dr. Lynam's opinion because "Dr. Lynam's statement does not address the claimant's reports of benefit from his PTSD counseling group or his report of improved mood after starting Sertraline." (*Id.* at 32.)

*The ALJ's Decision*

The ALJ follows a five-step inquiry to determine whether a claimant is disabled under the SSA. 20 C.F.R. § 416.920. The claimant bears the burden of proof at steps one through four, but at step five the burden of production shifts to the Commissioner to identify jobs existing in significant numbers in the national economy that the claimant can perform despite his or her

residual functional capacity ("RFC"), age, education, and work experience. *Tackett v. Apfel*, 180 F.3d 1094, 1098-99 (9th Cir. 1999). Each step is potentially dispositive. 20 C.F.R. § 416.920(a)(4).

At step one, the ALJ determined Plaintiff had not engaged in substantial gainful activity since Plaintiff's alleged onset date of January 11, 2011, through his date last insured of December 31, 2015. (Admin. R. 24.) At step two, the ALJ determined Plaintiff had the following severe impairments: (1) anxiety, (2) PTSD, (3) depression, (4) obesity, and (5) left ulnar pain secondary to history of left ulnar nerve transposition procedure. (*Id.*) At step three, the ALJ found Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. §§ 404.1520(d), 404.1525 and 404.1526). (*Id.*) Between steps three and four, the ALJ rejected the VA's disability determination, partially rejected Dr. Lynman's opinion that Plaintiff would need "additional breaks [and would miss] two or more days of work per month[,]" and found Plaintiff to have the following RFC:

> [The] capacity to perform medium work as defined in 20 CFR 404.1567(c) except the claimant is limited to no more than frequent stooping, climbing, kneeling, crouching, and crawling. He is limited to no more than occasional handling, fingering, or feeling with his left upper extremity. He would need to avoid exposure to unprotected heights, moving machinery, and similar hazards. He is limited to simple, repetitive, routine tasks requiring no contact with the public.

(*Id.* at 26, 32, 33.) At step four, the ALJ found Plaintiff unable to perform any past relevant work. (*Id.* at 33.)

At the fifth step, the ALJ relied on the testimony of a vocational expert ("VE") to help determine the extent to which Plaintiff's limitations affect his ability to obtain gainful employment. (*Id.* at 34.) At the August 18, 2016, hearing, the ALJ questioned the VE regarding a hypothetical claimant with Plaintiff's RFC as discussed above. (*Id.* at 54-56.) In response to the ALJ's

hypothetical question, the VE "testified that given all of these factors the individual would have been able to perform the requirements of representative occupations such as page (D.O.T. 353.367-022), with 5,300 jobs nationally; ironer (D.O.T. 590.685-042), with 1,600 jobs nationally; and burner (D.O.T. 573.685-038), with 355." (*Id.*) The VE also testified that each of the listed jobs within the range of light work. (*Id.*) The ALJ inquired if the VE's testimony was "consistent with the information in the *Dictionary of Occupational Titles* ("DOT"), to which the VE responded affirmatively. (*Id.*) The ALJ found, pursuant to SSR 00-4p, the VE's testimony to be consistent with the DOT and that Plaintiff was not disabled as he could perform other work that existed in significant numbers in the national economy. (*Id.*)

When the ALJ asked the VE if occupations with "more robust numbers" could be identified, the VE responded no further occupations were identified due to the added limitation of no contact with the public. (*Id.*) In response to the ALJ's question regarding unscheduled absences, the VE testified that if an entry-level employee missed two or more days, the employee was usually terminated. (*Id.* at 56.) The ALJ gave Plaintiff's counsel opportunity to question the VE, but Plaintiff's counsel declined. (*Id.*)

*Standard of Review*

The court reviews the Commissioner's decision to ensure proper legal standards were applied and the findings of fact are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). If there is reversible error, then the court has discretion to remand an administrative decision for corrective proceedings or to reverse or modify the decision without remanding the case for further proceedings. 42 U.S.C. § 405(g); *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000). Generally, when a court reverses an administrative decision, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation." *Benecke v.*

*Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004) (quoting *INS v. Ventura*, 537 U.S. 12, 16 (2002); *Florida Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985); *Moisa v. Barnhart*, 367 F.3d 882, 886-87 (9th Cir. 2004)). A remand for an award of benefits is appropriate when no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed. *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1100 (9th Cir. 2014).

*Discussion*

The Commissioner concedes the ALJ erred in not resolving the discrepancy between the VE's testimony and the DOT. Accordingly, the question before the court is whether further administrative proceedings or immediate award of SSDI benefits is appropriate on remand.

Plaintiff assigns error to the ALJ's finding of significant number of jobs in the national economy, arguing the total of 7,255 jobs does not constitute a significant number. (Pl. Opening Br., ECF No. 14 ("Pl. Br."), at 5.) Alternatively, Plaintiff argues his limitation to no more than simple, routine, repetitive tasks is inconsistent with the page position, requiring a reasoning level of three, and thus, reduces the number of jobs Plaintiff is able to perform to 1,955, which would also not constitute a significant number of jobs. (Pl. Br. at 5 n.1.) Though the Commissioner concedes the ALJ erred, the Commissioner argues the ALJ's error requires remand for further administrative proceedings because the ALJ has the affirmative duty to resolve conflicts between the VE's testimony and the DOT. (Def. Br. at 2-3.) In response, Plaintiff argues that remand should be for an immediate award of benefits because the record is complete and new vocational testimony would serve no useful purpose. (Pl. Reply at 1-2.) For the reasons stated below, the court agrees with Plaintiff.

The Ninth Circuit has held that remand should be for award of benefits only in "rare circumstances . . . where no useful purpose would be served by further administrative proceedings and the record has been thoroughly developed." *Treichler*, 775 F.3d at 1100 (citations omitted)

(internal quotations omitted). In determining what constitutes a "rare circumstance" warranting departure from the ordinary remand rule, the Ninth Circuit created the *Varney* rule, also referred to as the "credit-as-true" rule. *Id.*

The credit-as-true rule requires three inquiries. First, the court determines whether the "ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion." *Id.* at 1100-01. Second, if the ALJ has erred, the court determines whether: (1) the "record has been fully developed;" (2) "there are outstanding issues that must be resolved before a determination of disability can be made;" and (3) "further administrative proceedings would be useful." *Id.* at 1101 (citations omitted) (internal quotations omitted). Further administrative proceedings are useful when the record has not been fully developed and there are conflicts or ambiguities in the record necessary of resolution. *Id.* Third, if there are no outstanding issues and further proceedings would not be useful, the court treats the improperly discredited evidence as true and determines whether the whole record supports a finding of disability. *Id.* If so, the district court has the discretion to remand for immediate award of benefits. *Id.* at 1101-02.

However, the credit-as-true rule is not the sole analytical framework for deciding whether to remand for award of benefits. *Compare Rustamova v. Colvin*, 111 F. Supp. 3d 1156, 1163 (D. Or. 2015) (holding that application of the credit-as-true rule was not required to remand for award of benefits when the record was complete, further VE testimony regarding employment in significant numbers would serve no useful purpose, there was no conflicting medical evidence, and the Commissioner had failed to meet their burden at step five of the sequential analysis); *with McGary v. Astrue*, 442 F. App'x 337, 339 (9th Cir. 2011) (holding that credit-as-true rule did not apply and remand for further proceedings was appropriate when plaintiff argued that the rule was

applicable but did not point to improperly discredited evidence and only identified the ALJ's error in determining plaintiff's RFC). Indeed, the court has discretion to modify or reverse a decision by the Commissioner "with or *without* remanding the cause for a hearing." *Garrison v. Colvin*, 759 F.3d 995, 1019 (9th Cir. 2014) (emphasis in original) (quoting 42 U.S.C. § 405(g)).

Though the credit-as-true rule does not apply when parties do not argue that certain medical or testimony evidence was improperly discredited, remand for award of benefits is still appropriate when the Commissioner has failed to carry his burden at step five of the sequential process by not identifying a significant number of jobs in the economy that a claimant could perform. *See McGary*, 442 F. App'x at 339 (holding the credit-as-true rule does not apply when the legal error consisted of the ALJ incorrectly assessing claimant's RFC, in turn incorrectly assessing claimant's ability to perform other jobs in significant numbers); *see also Claussen v. Berryhill*, No. 6:17-CV-00258-AA, 2018 WL 2222718, at *7 n.2 (D. Or. May 15, 2018) (noting the credit-as-true rule does not apply when the error is only at step five of the ALJ's analysis and there is no discredited evidence to credit as true); *but compare Rustamova*, 111 F. Supp. 3d at 1165 (stating the claimant is disabled and entitled to benefits when the Commissioner fails to show there are jobs in significant numbers the claimant can perform); *and Clester v. Apfel*, 70 F. Supp. 2d 985, 993 (S.D. Iowa 1999) (holding that Commissioner failed to carry its burden at step five by not establishing work in significant numbers that plaintiff could perform, and "remand to take additional evidence would only delay the receipt of benefits to which [p]laintiff is clearly entitled"); *and Field v. Chater*, 920 F. Supp. 240, 243 (D. Me. 1995) (stating "[w]hen the Commissioner had a full and fair opportunity to develop the record and meet her burden at Step [five], there is no reason for the court to remand for further factfinding."); *and Davis v. Barnhart*, 377 F. Supp. 2d 1160, 1164 (N.D. Ala. 2005) (holding that the Commissioner failed to carry her burden at step five when the

ALJ relied on VE testimony not supported by substantial evidence and thus, the claimant was disabled and entitled to benefits).

The Commissioner is correct to concede that the ALJ erred in not resolving the conflict between the VE's testimony and the DOT, and to observe that this error, under Ninth Circuit case law, warrants further administrative proceedings. *See Zavalin v. Colvin*, 778 F.3d 842, 848 (9th Cir. 2015) (holding that further proceedings were necessary when the ALJ failed to question the VE regarding the discrepancy between the reasoning level of the job provided by the VE and the claimant's limitation of simple and repetitive work); *see also Rounds v. Comm'r Soc. Sec. Admin.*, 807 F.3d 996, 1004 (9th Cir. 2015) (holding remand for further proceedings was necessary because ALJ did not resolve the apparent conflict between the VE's testimony, claimant's RFC, and the DOT and that, on remand, the ALJ needed to provide a reasonable explanation justifying reliance on the VE's testimony); *see also Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007) (stating SSR 00–4p provides that an ALJ has an affirmative duty to question the VE regarding any conflicts between their testimony and the DOT and to provide a reasonable explanation for relying on the VE's testimony if there is a conflict).

Further proceedings, however, would serve only to delay the benefits Plaintiff is entitled to receive. If this court were to remand for further proceedings, as the Commissioner argues, the purpose of those proceedings would be to obtain an explanation for the ALJ's reliance on the VE's testimony, an unnecessary exercise in light of the VE's testimony that the no public contact limitation restricted Plaintiff to only those jobs identified. Even if the ALJ could provide a reasonable explanation for having relied on the VE's testimony, this court has held that the number of jobs the VE provided – 7,255 – would not constitute a significant number of jobs in the national economy. *See Cindy F. v. Berryhill*, 367 F. Supp. 3d 1195, 1220 (D. Or. 2019) (finding 7,400 jobs

in the national economy did not constitute significant number of jobs); *see also Lisa L. v. Comm'r of Soc. Sec.*, No. 3:17-CV-01874-AA, 2018 WL 6334996, at *4 (D. Or. Dec. 5, 2018) (finding 11,084 jobs did not constitute significant number of jobs in the national economy); *see also Watkins v. Comm'r Soc. Sec. Admin.*, No. 6:15-CV-01539-MA, 2016 WL 4445467, at *7 (D. Or. Aug. 22, 2016) (finding same with 11,000 jobs).

Additionally, the Commissioner argues the "error in the VE's testimony" – that the job of page, which requires a reasoning level of three, does not comport with Plaintiff's RFC, which requires a reasoning level of two – renders all of the VE's testimony suspect and requires further administrative proceedings to resolve the defect. (Def. Br. at 4.) The Commissioner provides no legal support, nor has the court found a case, that states such an error makes suspect the entirety of the VE's testimony and requires new testimony. Rather, SSR 00–4p speaks to the ALJ's affirmative duty to resolve such conflicts, but it does not speak to whether the VE's testimony requires new testimony because of the conflict. *See* SSR 00-4p, 2000 WL 1898704 (Dec. 4, 2000) (stating "[w]hen vocational evidence provided by a VE or VS is not consistent with information in the DOT, the adjudicator must resolve this conflict before relying on the VE or VS evidence to support a determination or decision that the individual is or is not disabled . . . [and] must explain the resolution of the conflict irrespective of how the conflict was identified.").

Though the VE could possibly provide further evidence of other jobs with more "robust numbers" it is unlikely because, according to the VE, Plaintiff's limitation of no public contact narrows the jobs Plaintiff can perform to only those identified. Thus, the VE testimony in this record would not support a determination that Plaintiff is not disabled even if the ALJ provided a reasonable explanation for his reliance on that testimony. Moreover, though it is the ALJ's affirmative duty to develop the record and reconcile any conflicts between the VE's testimony and

the DOT, the Commissioner failed to carry his burden at the fifth step of the analysis by not establishing a significant number of jobs in the national economy that Plaintiff could perform. Consequently, the ALJ would be required to find Plaintiff disabled irrespective of the apparent conflict between Plaintiff's RFC and the reasoning level of the page position. Further proceedings would be of no useful purpose and, because there no other outstanding issues in the record, Plaintiff is disabled under the SSA. Accordingly, this court recommends this case be remanded for an immediate award of benefits.

*Recommendation*

For the reasons stated above, this case should be remanded for an immediate award of benefits pursuant to sentence four of 42 U.S.C. § 405(g).

*Scheduling Order*

The above Findings and Recommendation are referred to a United States District Judge for review. Objections, if any, are due within 14 days. If no objections are filed, review of the Findings and Recommendation will go under advisement that date.

A party may respond to another party's objections within 14 days after the objections are filed. If objections are filed, review of the Findings and Recommendation will go under advisement upon receipt of the response, or on the latest date for filing a response.

DATED this 18th day of November, 2019.

JOHN V. ACOSTA
United States Magistrate Judge